BROWNELL, Atty. Gen.

v.

BANK OF AMERICA NAT. TRUST &
SAVINGS ASS'N.

No. 11880.

United States Court of Appeals
District of Columbia Circuit.

Argued March 9, 1954.

Decided June 10, 1954.

Mr. George B. Searls, Attorney, Department of Justice, Washington, D. C., for appellant.

Mr. Christopher M. Jenks, Washington, D. C., with whom Messrs. Samuel B. Stewart, Jr., San Francisco, Cal., and E. F. Colladay, Washington, D. C., were on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

CLARK, Circuit Judge.

This case involves an interpretation of the Trading With the Enemy Act.[1] No dispute exists as to the facts. Prior to the imposition of freezing controls on German assets on June 14, 1941, J. A. Henckels, K.G., a national of Germany, became indebted to appellee in the principal amount of $100,060. The indebtedness was represented by bills of exchange which became due and payable on May 31, 1941, with interest from August 18, 1941, at the rate of 4.7[2] percent. On August 8, 1942, the Alien Property Custodian[3] issued the first of a series of orders vesting Henckels' property.

Thereafter, appellee, a national banking institution, filed a timely notice of claim under the provisions of Section 34(a) of the Trading With the Enemy Act,[4] asserting its *debt claim* for the principal amount above-mentioned, with interest from August 18, 1941, to date of payment. The Director, Office of Alien Property,[5] by his decision dated Au-

---

1. 40 Stat. 411 (1917), as amended, 50 U.S. C.A.Appendix, § 1 et seq.

2. Pursuant to a stipulation entered into by the parties during proceedings in the District Court, it was agreed that interest, if allowed, should be payable at the rate of 3.25 percent. However, the rate of interest, itself, is not in issue.

3. See footnote 5, infra.

4. 60 Stat. 925 (1946), 50 U.S.C.A.Appendix § 34(a).

5. With certain exceptions not pertinent to the case, all functions vested by law in the Alien Property Custodian were transferred to the Attorney General by Reorganization Plan No. 1 of 1947, 61 Stat. 951, 5 U.S.C.A. § 133y–16 note, 12 Fed.Reg. 4534 (1947). Under the authority thereby conferred, the Office of Alien Property was established within the Department of Justice.

gust 27, 1952,[6] *allowed* the principal amount of the debt claim, with interest from August 18, 1941 (contract date when interest commenced to accrue) to August 8, 1942 (date of first vesting order). But, the Director *disallowed* so-called post-vesting interest, *i. e.*, interest accruing after August 8, 1942, citing Kay v. McGrath[7] as authority for his conclusion. From this disallowance of post-vesting interest, appellee-Bank filed a complaint for review in the U. S. District Court for the District of Columbia as permitted by the statute.[8] On appellee's motion for summary judgment, the District Court entered an order without opinion reversing the Director and allowing post-vesting interest.[9] The Government appeals from the trial court's order of reversal.

Thus, we are presented with the single question of whether or not, as a matter of law, the amended Act authorizes payment of *post*-vesting interest, as well as *pre*-vesting interest, to a creditor whose claim matured prior to the outbreak of hostilities and whose statutory right to recover the principal amount is conceded. Because we believe this problem is not a difficult one when reduced to fundamentals, we think it would be helpful as a preliminary to further discussion to restate the nature of the relations between the parties. First, there was a matured debt with a contract provision for interest running from Henckels to appellee. Second, no one can doubt, inter se, appellee's right to receive, and Henckels' duty to pay, interest on the bills of

exchange until payment of the principal. Finally, following acquisition of the debtor's property by the United States, does the statute contain language which modifies the pre-existing creditor-debtor relationship so as to entitle the creditor to interest on its debt claim for one period but not for another?[10]

Following World War I, debt claims were governed by Section 9 of the Act. During that period, there was no express provision for the payment of interest on debt claims. When the Supreme Court was first presented with the issue of whether or not an allowance of interest was authorized under the Act as it then stood, and as a preliminary observation on the general rights of American creditors seeking satisfaction of their debts out of vested assets, the Court's opinion laid down the following basic consideration: "This provision [*i. e.*, Section 9] is highly remedial and should be liberally construed to effect the purposes of Congress and to give remedy in all cases intended to be covered." Miller v. Robertson, 1924, 266 U.S. 243, 248, 45 S.Ct. 73, 75, 69 L.Ed. 265. After full discussion, the Court held that interest was payable under the Act from the time the debt matured until payment of the principal amount in full. It was further stated that

> "While the suit * * * is one against the United States, the claim was not against it. No debt was alleged to be owing from it to the plaintiff. The rule of sovereign immunity from liability for interest

6. Debt Claim No. 5024, Docket No. 51–34DC–M105, Office of Alien Property, Department of Justice.

7. Anita Kay v. McGrath, Civil No. 456–49, D.C.D.C., November 6, 1950.

8. 60 Stat. 927 (1946), 50 U.S.C.A.Appendix, § 34(e) and (f).

9. Bank of America N. T. & S. Ass'n v. McGranery, Civil No. 4763–52, D.C.D.C., June 1, 1953.

10. It may be noted that appellant concedes that the net proceeds from the sale, use, or other disposition of Henckels' proper-

ty would be sufficient to pay this claim in full, including post-vesting interest. In the event that the debtor's property was insufficient to meet the creditor's claim, we do not perceive that the United States would incur liability for any discrepancy which might arise therefrom. *Compare* subsections (e) and (f) of § 34, 60 Stat. 927, 50 U.S.C.A.Appendix, § 34(e) and (f). These subsections, in themselves, seem to negative the suggestion that debt claims are claims against the United States because the extent of recovery is controlled by the sufficiency of identifiable enemy funds.

\* \* \* does not apply." Miller v. Robertson, supra, 266 U.S. at page 257, 45 S.Ct. at page 78.

While appellant concedes the authority of the Miller case during the years prior to 1941, we are told that its authority was doubtful from 1941 to 1948. Subsequent to 1948, and for purposes of ascertaining the law applicable to this case, appellant contends that the 1941,[11] 1946,[12] and 1948 [13] amendments to the Act—either individually or in combination—invalidate the rationale of the Miller case insofar as *post-vesting* interest is concerned.

These amendments are said to have drastically changed the fundamental nature of the Act as it was known and construed during the post-World War I era. Namely, that since 1948, and perhaps as early as 1941, the United States acquired something more than a custodial interest in the enemy property held by it so as to characterize Section 34 proceedings not only as suits against a sovereign but also as claims against a sovereign; and therefore, the rule of sovereign immunity from liability for interest bars appellee's claim for interest after the date when Henckels' property was vested. We think this argument is contrary to recent judicial decisions [14] which have subjected Sections 5 and 39 to exhaustive analysis encompassing legislative history, prior cases and other sections of the Act. The conclusions reached are clear. They do not support appellant's contentions.

While Section 9 was not repealed at the time Section 34 was enacted, its provisions pertaining to debt claims were superseded by the new section.[15] The Congressional reports explicitly stated the primary reason for revising the procedures theretofore applicable to debt claims processed under Section 9 and the limited scope which was intended to be given to the revision.[16] The substantive provisions of the two sections, insofar as they relate to debt claims, are similar. Both sections are silent as to payment of interest. We find nothing in the Act or the decisions under it which would cause us to depart from the reasoning of that portion of the Miller Case pertaining to allowance of interest. In Kay v. McGrath, supra, an American citizen filed a claim under Section 34 seeking payment of delinquent alimony, with interest at the rate prescribed by state statute, out of vested property once owned by her former husband, a German citizen. The District Court confirmed the administrative determination that alimony was a "debt claim" within the meaning of Section 34. But, after stating that the Mil-

11. 55 Stat. 839 (1941), 50 U.S.C.A.Appendix, § 5(b).

12. 60 Stat. 925–928 (1946), 50 U.S.C.A. Appendix, § 34.

13. 62 Stat. 1246 (1948), 50 U.S.C.A.Appendix, § 39.

14. As to § 5(b), see Clark v. Uebersee Finanz-Korp., 1947, 332 U.S. 480, 486–487, 68 S.Ct. 174, 92 L.Ed. 88. As to § 39, see Guessefeldt v. McGrath, 342 U. S. 308, 315–319, 72 S.Ct. 338, 96 L.Ed. 342.

15. § 34(i) provides: "The sole relief and remedy available to any person seeking satisfaction of a debt claim out of any property or interest which shall have been vested in or transferred to the Alien Property Custodian \* \* \*, or the proceeds thereof, shall be the relief and remedy provided in this section, and suits for the satisfaction of debt claims shall not be instituted, prosecuted, or further maintained except in conformity with this section \* \* \*. The Alien Property Custodian shall treat all debt claims now filed with him as claims filed pursuant to this section. \* \* \* "

16. "Section 34 is not a radical departure from the treatment of debt claims in World War I, since the principles of payment and of judicial determination are preserved. *There is no intent to depart from established judicial precedents in this field, with respect to such matters as what constitutes a 'debt'*, except where express changes would be made by Section 34. *The principal change is from 'first come, first served' to 'equitable distribution'*. [Emphasis supplied]. Sen. Rep.No.1839, 79th Cong., 2d Sess. 4 (1946); H.R.Rep.No.2398, 79th Cong., 2d Sess. 10 (1946), U.S.Code Congressional Service 1946, p. 1467.

ler "[C]ase is still controlling", the Court nevertheless denied post-vesting interest by distinguishing an allowance of interest on accrued alimony from an allowance of interest on strictly contractual obligations. We are not persuaded that such a distinction is justifiable by a reading of the Act. In any event, the case does not purport to abrogate the Miller rule when, as in the present situation, interest flows from contract.

Affirmed.